We'll call the next case, Truck Insurance Exchange v. Kaiser Gypsum Company. And the appellant, Truck Insurance Company, Ms. Ho, good to have you with us. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Bankruptcy law can be complicated, but this case is not. A plan that strategically enables litigation abuse cannot possibly be proposed in good faith as the Bankruptcy Code requires. Since the Garlock bankruptcy uncovered rampant, systemic litigation abuse by counsel for asbestos claimants, all asbestos trusts created under Section 524G have included basic anti-fraud protections. All that is, except the plan confirmed below. The lack of fraud protections has always been Truck's primary objection to the plan. In fact, Truck offered to withdraw all of its objections and support the plan if it simply included anti-fraud protections like every other post-Garlock plan. The claimant's refusal to do so, going so far . . . You're talking about that Garlock case. That's not a Court of Appeals case. There's precedent here. It's a bankruptcy judge's opinion in the Western District of North Carolina. Yes. That's correct. That's correct, Your Honor. And it has then served as the model going forward, the protections, the fraud uncovered in that case, and the protections adopted to combat that fraud in the wake of that case have been adopted in every contested 524G trust that we're aware of since then. We're not bound by Garlock in any way. No, Your Honor. Our argument isn't that you're bound by it. Our argument about Garlock is really twofold. Number one, that the rampant fraud uncovered by the discovery permitted in Garlock is the reason why every trust since Garlock has adopted the same anti-fraud provisions that we're asking for here. You're saying it's been marketed around the country. I'm saying that bankruptcy judges around the country have refused to confirm plans since Garlock that do not include Garlock-type protections. So, for example, Your Honor, the Merrimont bankruptcy that we discussed. It's not precedent here. No, Your Honor. Nobody can control us. No, no. In any way, shape, or form. It might be persuasive and all that, but it's not precedent. No, Your Honor. We're not citing it to this Court as precedent. We're relying on Garlock for the proposition primarily that the absence, that the plan here could not have been proposed in good faith when it refused to include the same anti-fraud provisions that every post-Garlock plan has included. I'm sorry. Go ahead. How is Truck in any different position in the bankruptcy than it would have been before the bankruptcy, facing its insurance contract obligations? Yes, Your Honor, and that seems to be the other side's primary position on standing, that because we were subject to fraud before, a plan that facilitates fraud, we shouldn't have standing to object. Tell us how they're in a different position now than they would have been before the bankruptcy. Yes, a couple of reasons, and let me start with our standing to challenge the good faith proposal of the plan. We have been, the plan facilitates fraud, and it deprives us, Your Honor. Yes, Your Honor. Hold up. Yes. Wouldn't you start with the insurance neutrality part? Certainly, Your Honor, I could ... As long as the plan is insurance neutral, where do you go from there? Certainly. We disagree that the plan is insurance neutral. Before the plan was approved, we had a coverage defense about the duty of cooperation. After the plan was approved, we do not have that same coverage defense. That coverage defense was resolved against us, and it was given preclusive effect. We don't think the plan is insurance neutral for those reasons, Your Honor. Yes, Your Honor, that is what the plan may say, but that is not the test for insurance neutrality, Your Honor. The test for insurance neutrality is have the insurer's rights been abridged or affected in any way, because again, this is a standing doctrine. Is there, counsel, on this point, is there ... I understand your argument that you believe the cooperation clause entitles you to assert the defense that the Kaiser's, I guess, role in the confirmation of the plan breached that duty, and then there's, of course, the other side that says, hey, that duty really replies on a case-by-case basis. What's your best case that says this cooperation obligation applies here to a broad-based conduct like participation in a bankruptcy plan? What's the closest case to something like this that extends that cooperation agreement to what we have here? Thank you, Your Honor, for that question. I think our best two responses ... I don't have a case that directly responds to their argument because, Your Honor, it's simply the language of the plan is clear. It applies to ... They are obligated to cooperate, comma, and then the plan goes on. It's a standard provision that, so far as I'm aware, has never been challenged to apply in a circumstance like this. I think our best case on insurance neutrality overall, Your Honor, is the Seventh Circuit's decision in C.P. Hall where the court, even though that case held that the insurer there didn't have standing, the court went on to say, but insurer clearly would have standing regardless of insurance neutrality. In a case where there was a scheme between the debtor and the claimants that directly affected the insurer, and that's exactly the case that we have before you today, Your Honor. I'm back to the question I asked you some time ago. How is TRUC in any different position now than it was before the bankruptcy? Let me try it again another way. Let me focus on what I was just talking about with Judge Quattlebaum about the coverage defense. Before the plan, we had the ability to assert a defense to coverage. After the plan, we don't have the ability to assert that, and that was given preclusive effect. This court has said that the preclusive effect is enough for standing. Hold on, hold on. Tell us why you say that when there's a specific provision, I think two of them at least, in the plan that says all those defenses survive. Yes, Your Honor, because this court does not look just to what the plan says about insurance neutrality, but what the plan does. We aren't aware of? It is the part of the confirmation order, Your Honor, that makes a declaration that says you cannot, that the debtor's conduct in this bankruptcy cannot be the basis of a coverage defense and gives that, it's a declaratory judgment, Your Honor, in the confirmation order approving the plan. That is what we are pointing to. The presence, the language in the plan itself, the courts don't look to what the plan says, Your Honor, they look to what the plan does to assess neutrality. Just taking that a bit further, I mean, and I don't, hypothetically, if you were to say or offer an argument about that clause that no court has ever adopted and that was uniformly unreasonable, and please don't take that as suggesting that's what I'm thinking your position here, but if hypothetically a party did that and a court said, hey, this is just some way out there argument that no one's ever done before, it doesn't make any sense, and we got to dispose of it to move on with the plan, but everything else related to the insurance is still the same, are you saying that makes, that defeats insurance neutrality? Whatever argument an insurer makes, even if it's outlandish, you automatically, because there's a ruling on that, lose neutrality? No, Your Honor, our argument focuses on this, like most insurance neutrality arguments, focuses on this particular plan and this particular confirmation order, and this particular confirmation order declares that the debtor's conduct in this proceeding cannot be the basis of the plan, for a coverage defense based on the lack of cooperation, so that takes something we had before the plan was confirmed, the ability to assert that as a coverage defense, and it takes that away from us. Now, we can debate the merits of that, but not How is that going to come up? You're now back in a state or federal court, it's an asbestos case, and the bankruptcy court has said to Kaiser and whoever the other defendants are, you have to cooperate, so you go into that case, you ask them to cooperate and give you information with respect to whoever the plaintiffs are in that case, and they say no. You're going to have an affirmative defense in the state court, or you can go back into the bankruptcy court and get an order from the bankruptcy court, or have that exempted from the plan. I'm having a lot of difficulty understanding just what this right is you say you've lost. What we lost was the right to assert as a coverage defense based on the debtor's conduct in this proceeding. That it did not cooperate with us. It's supposed to be a defense in an actual asbestos case that's pending on the state court somewhere? No, Your Honor, and it doesn't need to be, because our argument is that the language of the agreement, the insurance policy, it does say in the conduct of suits. That is the last item in a sentence that follows three ands. So that is not the exclusive way that the duty of cooperation, the duty of cooperation is unqualified initially. It just says it is obligated to cooperate, and then the clause goes on and it ends by saying and in the presentation and preservation of evidence, and in the conduct of suits. But if as a matter of law you didn't have that right that you claim you have to use this type of situation to say there's been a violation, so long as you still have the right to assert it on a case-by-case basis, would that be the case? Would it be neutral in that sense if you erroneously asserted that this clause entitles you to do this? I think I understand your question, Your Honor, and I think that whether we can is a merits question and not a standing question. Insurance neutrality goes to, although it's not entirely clear in the case law, I think it's best understood as going to standing. The basis of no stand, there's a whole bunch in that unpacking that with standing in bankruptcy court. We could spend hours talking about let's mark and what all that stuff means. But in order that the principle of insurance neutrality, there's got to be a determination that it's neutral or not. And so you're saying you cannot make, if the issue of whether you had that right to begin with can't, essentially is irrelevant in the insurance neutrality discussion? I wouldn't go so far as to say it's irrelevant, Your Honor. You could certainly imagine I guess cases of frivolous assertion, but that's certainly not what we have here. We are basing our argument on the plain text of the insurance policy which obligates Kaiser to cooperate, and then it goes on and it explains more specific circumstances. But I think it is sufficient for standing and it's sufficient to defeat insurance neutrality both on the language on the coverage and also alternatively independently as the Seventh Circuit held and one of my friends on the other side's own case, C.P. Hall, that whereas here you have a situation where there is a scheme, an alliance between the debtor and the claimant that adversely affects the insurer. And I don't think there's any argument that since we are the party on the hook for paying for fraudulently inflated claims, that that fits this case to a T regardless of insurance neutrality. So I think there are two ways for this court to resolve that issue. And of course then our 520, our good faith arguments about why the plan wasn't proposed in good faith, I don't think any of that has to do with insurance neutrality at all, Your Honor. I think that is a separate and independent argument that we have proved up standing independently of that. And I see that my red light is on. If there are no further questions, I'll reserve the rest of my time for rebuttal. Thank you, Your Honors. Thank you very much, Ms. Hogan. You saved some time. Mr. Marshall, tell us who you represent. I represent the debtors. Good morning, Judge King. May it please the court. The only objection to the confirmed plan here comes from a primary asbestos insurer, even though the plan expressly preserves Truck's rights and the debtors' obligations under the Truck policies. Before the bankruptcy, Truck was obligated to defend about 14,000 asbestos claims, even fraudulent ones, with the cooperation and assistance of Kaiser and Hanson, the debtors, and then $100,000 per claim. After the bankruptcy, all of this remains the same for Truck. The lower courts, with the district court considering the matter de novo, both found that, and I quote, the plan, "...returns Truck to the tort system exactly as it was pre-petition. It simply restores Truck to its position, and Truck loses nothing. Correspondingly, the plan enables nothing. It facilitates nothing. The debtors' excess insurers indemnify amounts exceeding that $500,000 limit in the Truck policies. None of them objects to the plan. So what Truck, unlike the excess insurers for the same claims it's seeking, as both lower courts also found, is to use someone else's bankruptcy to improve its policies, to change them to its advantage, and to limit its financial exposure. And it's doing all that with no factual predicate in the record, but instead on claims that the lower courts found to involve speculation. So counsel, let me just, it's a little bit hard to navigate whether we're talking about merits and standing and all this sort of stuff. But, you know, the bankruptcy, or the district court, found that the situation here with respect to trust was insurance neutral. And it found that they, that Truck did not have, or to the extent there was a claim about failure to cooperate by your client's involvement in this plan, that that didn't violate the duty to cooperate. I mean, I've said that perfectly, but those findings are basically there. Doesn't Truck have the right to appeal those two findings? Do you dispute that there's not standing for us to consider those issues on appeal? We do dispute that. As a matter of appellate standing, they don't have the right to. Everybody who loses in the federal court system has a right of appeal. 1291 gives every loser a right of appeal, does it not? And Truck lost, and if they lost, they have a right of appeal. I mean, I can't, I have trouble getting past that point. 1291 creates subject matter jurisdiction in this court for an appeal, but in the context of bankruptcy- It gives appellate jurisdiction for final decisions. And Truck presented these issues below, to the bankruptcy court, to the district court, correct? And lost. Yes. And lost. I mean, the merits are a different thing, but I have trouble with the point that they don't have a right of appeal when we give everybody, everyone else that comes to this court, in any kind of case, the right of appeal. We're not disputing jurisdiction, Judge King. Judge Quadobom was asking about standing or right to appeal. But standing and jurisdiction, that's where it gets kind of, are you basing this on these prudential bankruptcy standing sort of things? Let's just break it down. Do they have Article 3 jurisdiction to appeal? Do they have Article 3 standing to appeal? They have Article 3 standing to challenge whether the plan is insurance neutral. And does that include the decision about the, do you, to cooperate? That would be a part of that, yes. Okay. All right. And your position is they don't have bankruptcy appellate standing under this person aggrieved concept and- Correct. Under this court's precedence in urban broadcasting and Clark. Okay. All right. I understand what you're saying. That's not a jurisdictional doctrine. Correct. That's the way this court and every other court has interpreted the bankruptcy code. And it may remain, and there's a, you know, I got you. And I think the validity of that, you know, is something that the parties dispute, or at least there's out there dispute about, you know, in the wake of Lexmark. But at least I understand your position on that. And no court has repudiated the doctrine since Lexmark. And this court has applied it in unpublished decisions. We've imported it in unpublished decisions. Yes. So which parts of the appeal now that you say that there is no standing for? Because I'd understood you initially to say that Truck did not have standing, at least to be here, on the insurance neutrality issue. And then you just said that they do. As Judge Qualum mentioned, the doctrine's titles are unhelpful sometimes. But I'm going with what the courts say. So if we're talking bankruptcy appellate standing, they don't have the right to be here at all. If we're talking what's often called bankruptcy standing, I'll call 1109B, just so I don't have to say standing. They have the right to challenge whether the plan is insurance neutral. But if they lost, which is the key factor as to them, you're saying they have no right to appeal that order. Correct. And that's because? Because the order does not directly affect their pecuniary interests. Their own theory of the case is not that the order itself causes a pecuniary harm. It's that in a later case, after the bankruptcy in the tort system, they might face a liability they would not otherwise have faced, or a larger one, depending on how discovery goes. So as a matter of law, if the plan was not insurance neutral, you say that does not affect Truck? That does not give Truck appellate standing. We don't deny that that would affect Truck in some sense. They could raise this issue in the bankruptcy court, lose, but even though it's erroneous, they couldn't appeal it. Correct. And that's the urban broadcasting case. It's the opportunity finance case in the 8th Circuit. So let's assume it was not a duty to cooperate generally. They were arguing in case Smith v. Kaiser in state court in Greenville County, South Carolina, that Kaiser had violated its duty to cooperate. Let's assume hypothetically that was in there. The bankruptcy court said no. There was no duty to cooperate, and they issue a finding there. Are you saying they can't appeal that? Yes. Okay. That's just something because it... In urban broadcasting opportunity finance, Ernie Hereford, the party's allegation was they had lost a defense that they would be invoking in a subsequent litigation. The court said that's not direct. Or in the Marvau case from EDVA, which we cited, that's the doctrine of appellate standing, which recognizes the unique realities of bankruptcy litigation, which is usually a sprawling mess. The order here was entered by the district court. Correct. Truck received de novo review in the district court, which is a little different from your typical bankruptcy case. So two courts of independent... The bankruptcy judge made recommendations, basically. Exactly. Like a magistrate judge. We call those recommendations. But here, I characterize them as recommendations. It went to the district judge. He actually had a two- or three-day hearing and took all these things up, and Truck presented them. It lost. And you're saying he can't appeal. Correct. They can't appeal. Truck can't appeal. Truck cannot appeal. And I refer the court... That just runs counter to everything that I've ever known about the process we have. Bankruptcy is a strange world, Your Honor, but there are two precedents of this court, and I particularly refer you to the more recent one, urban broadcasting... They're Article I courts. They don't even have an Article III court. It's an Article I, right? I'm about to run out. Statutory court does things that are, what, they hear millions of dollars, 14,000 lawsuits, impacting all these people. It's unreviewable. That's your position. I see my time is up, Mayor. No, you do right ahead. Can I respond? I'm just... I... I'm musing a little bit. I will simply keep... You can respond to that. The same three cases I mentioned, especially... And again, you could be wrong on standing. We say, yes, they have standing. You could be wrong on this equitable mootness. We can say we're not going to dismiss it on equitable mootness. But you could be absolutely right on the merits, correct? Correct. Right. And you'd win the appeal. Yes. And you'd go home happy. I would not object to that, Your Honor. And I would refer you to the C.P. Hall case, which Ms. Ho also mentioned. But you would say we have made a bunch of bad law. Oh, I would not at all say that, Your Honor. I'm happy to have my client win on any ground you wish to give us. I point you to the C.P. Hall case. And if you're inclined to look at the text of the Assistance in Cooperation Clause, I urge you to read it in context, the J803. There's a provision about occurrences, a provision about claims, and then a provision about the cooperation. The whole context is individual claims. Ms. Ho recognized it's a standard clause, and so I refer you to the Admiral case, which addressed what these kind of standard clauses do. Thank you. If there are no further questions, I'll yield my time to my colleagues. Thank you, Mr. Marshall. Mr. McClay, it's your turn, sir. Good to have you with us. Thank you, Your Honor. It's a pleasure to be here. Good morning, Your Honors. May it please the Court, I'm Kevin McClay, and I'm here representing the Official Committee of Asbestos Personal Injury Claimants for Kaiser Jepson. Your Honors, it's important to note from the committee's perspective what a momentous accomplishment the debtors' successful confirmation of the plan below was. It required the debtors to successfully negotiate with their asbestos creditors, the representative of future claimants, state and federal environmental agencies, other unsecured creditors, and 12 insurance companies. But they did it, and they received 100% approval on their plan from all creditors entitled to vote. And this outcome was in keeping with the purposes of Section 524G of the Bankruptcy Code, which, as the Third Circuit has noted in Federal Mogul, is to protect the rights of asbestos claimants while also enabling asbestos-defendant companies to obtain a bankruptcy fresh start. Indeed, there was only one objector to this plan, Truck Insurance Exchange, who objected even though the plan left Truck exactly where it was pre-petition, an insurance company defending and resolving asbestos personal injury claims against the debtors in the tort system as it has done for decades and as it is continuing to do right now. But this behavior was no surprise. It was the continuation of a long pattern by Truck of attempting to reduce its insurance obligations. As the Bankruptcy Court noted, we are here because decades ago, Truck improvidently wrote an unlimited insurance policy, and that Truck would like to improve that deal and use this case to limit its exposure. But, Your Honor, it's very fundamentally, the law does not give an insurance company a veto over a Section 524G plan of reorganization, whether pursuant to unsupported stale arguments or otherwise, and this Court should reject Truck's objections to the plan. Now, Your Honors, I'd like to go into several of the issues that Your Honors have raised in previous questions, and I'm basically going to put aside most of my planned remarks because this is more pertinent, I think. First of all, Your Honor, fraud is a factual issue, and there was no evidence of fraud below. The record is absent of it. In fact, the Truck's experts didn't even look at a single claim file involving Kaiser Gypsum and had no knowledge of whether there was any disclosure or nondisclosure of other alternative expenditures, exposures. As I read Truck's brief, which I may have read incorrectly, but as I read it, they seemed to argue that if they were back in a state or federal court trying an asbestos case and wanted the information they sought in the plan in terms of has the plaintiff in this case gotten coverage from another trust, is there some other nefarious activity going on, that they're going to be prohibited or inhibited in some way of doing that? But I wasn't exactly sure how. Well, I'm not exactly sure how either, Your Honor, because this is a pass-through plan, and what a pass-through plan does, it takes claims and it puts them back to where they were. It's a very common, typical concept in many bankruptcies, including in many asbestos bankruptcies, and Truck is back in the tort system just as they were before with the same discovery protections, the same state law rights as they enjoyed before. To the extent that what Truck is saying is they don't like the state law regimes, they don't like what the state of Virginia has decided to do with respect to discovery, they're not entitled to change that legal regime. So even if they had a point, and they don't, as I'll get to in a second, that they don't get all the discovery they want in the state court system, that's a matter of state law. They don't have a right to change that because of a bankruptcy, and there's no legal doctrine that says that they do. But secondly, Your Honor, of course, it's also, in our view at least, not accurate. They have the same discovery rights as they have always had in the tort system to ask the plaintiffs whatever questions they want to ask about alternative exposures. The trusts, in fact, do respond to subpoenas. If you look at the trust distribution procedures, you'll see that that's the case. And so their claimed harm just doesn't exist. They have the same rights they've always had, and they're not entitled to more. But going back to what I was saying a minute ago, Your Honors, fraud is factual and the record is absent of any suggestions of fraud. I could talk more about the Garlock case, but suffice it to say it was subsequently mooted, it was interlocutory, and Judge Hodges was the original judge, but Judge Whitley took over the Garlock case. That's the same bankruptcy court judge in Kaiser Gypsum, the successor judge to Garlock. And yet he found their Garlock-based arguments extremely unpersuasive and rejected them as a matter of fact. And they have not shown that his ruling in that regard was clear error. So, counsel, if I could try to just figure out a little bit of how this all fits together structurally. Let's assume maybe a little bit like Judge King was talking about, that we agree with Truck that they have standing to appeal the decisions about insurance neutrality and the decisions of the district court about the cooperation clause. And we decide they can appeal those, but we find that they lose on the merits of those. Where does that leave us with respect to the plan objections to the compliance with 524G? I mean, in other words, those are obviously connected, but first of all, you can have standing on some claims and not others, correct? And does our decision about whether Truck has insurance to object to the merits of compliance with the statute depend on whether we find against them on the issues that hypothetically we have standing, the neutrality issue? No, Your Honors. They don't have standing to object under 524G's provisions, for example, because those provisions aren't for their benefit. Those provisions only affect the uninsured claimants that would collect monies under the trust. So as a matter of basic constitutional standing, they don't have standing to argue about someone else's rights. So regardless of your ruling on any other issue, they don't have standing to talk about 524G compliance. And all cases are uniform on that point. I don't think there's a single case that goes the other way. Okay. So even if we say, switch my hypothetical, we have standing to consider insurance neutrality, and we say it wasn't neutral, they don't have standing to object to the compliance with 524? If you say that the plan isn't insurance neutral, they still would not have standing to object to 524. That's correct. They would have standing to object about the interference with their rights, but not as to 524G. That's just not their business because it's there to protect uninsured creditors, is that? That's exactly right. And with respect to the insurance neutrality language, I'll just note another thing, Your Honors, which is that there are 12 insurance companies in this case, and 11 of them thought that insurance neutrality language was just fine. In fact, they negotiated it pursuant to an extensive plan negotiation process. It's just one insurance company, Truck, who didn't like it and didn't think it was actually neutral. There are a series of California state court cases, Your Honors, interpreting the duty of cooperation in individual cases, and none of them go the way Truck would have them go here. And the admiral insurance case mentioned by my colleague to my right, of course, also was expressly on point, saying cooperation clauses can't be used in this way. And, Your Honors, I see that my time has expired. If Your Honors have any further questions. Thank you. Thank you very much, sir. We appreciate it. Mr. Herron? Good morning, Your Honors. My name is Ed Herron. I have three minutes, so I will be succinct. I represent Lawrence Fitzpatrick. He was appointed by the Bankruptcy Court to be what we refer to as the future claimants representative. I was on motion of the debtors with the support of the committee. The appointment of a future claimants representative is an integral component of 524G and really part and parcel of 524G's focus on protecting the interests of future claimants. And, of course, because asbestos has a long latency period, there are claimants who will come forward to seek compensation from their exposure to Kaiser's products who don't yet know they're sick. So the future claimants representative stands in for those claimants. And really we see our role as twofold, to ensure that whatever funds go into a trust are sufficient to compensate those future claimants, and then to make sure the trust is structured and administered in a way that money remains for future claimants. And here Mr. Fitzpatrick is highly experienced in this role. He's been appointed in 11 cases, including this one, in six different jurisdictions. And we're here to assure your honors that this plan does fulfill a very important purpose and satisfies the requirements of 524G. We participated in the negotiations and the diligence that led to the plan, and we supported its confirmation. And we believe that the trust, as funded with $50 million, $49 million in cash and $1 million in a note, is adequate to protect the interest of future claimants. And really those interests are kind of twofold. The way the trust works is it fills the gap where the company would otherwise pay a deductible. In the early years of the coverage, the deductible is $5,000. In the late years, $50,000. And then there are some periods later in time where there is no coverage at all, and the trust would pay those uninsured claims. Because future claims come last, they're more likely to be susceptible or the risk of a higher deductible or no insurance at all. And the trust fills these holes. Now, one might say, well, without the bankruptcy, Kaiser would be there to pay the claims not covered by insurance.  And indeed, Kaiser was being subject to punitive damages awards, which are not covered by insurance. Not very many. Three of the last seven, Your Honor, which one included a $20 million punitive damages award. So if that trend continued and Kaiser were rendered unable to pay or had to go into a Chapter 7, our constituents would be the ones who are most harmed. Of course, in a Chapter 7, who knows how the insurance is administered? Who can say whether anyone at all would be around to satisfy the cooperation clause? And then we'd hear a bunch of other reasons why truck can't pay. But this benefit didn't come for free. It's at a cost to claimants. Significantly, current and future claimants have given up the right to seek punitive damages in the trust and in the tort system. Right there, that benefits truck because, obviously, they're not facing punitive damages. The plaintiff's leverage to settle their claims in the tort system goes down. Truck's already been benefited here. What we're talking about is whether truck should receive an additional benefit and whether they have essentially a veto in this case to leverage that benefit. I see I'm out of time, Your Honor. We're already into the three minutes. I would just like to make one observation about the standing argument. That is, were this court to find that truck has standing on these facts, where its legal argument on the cooperation clause, it is frivolous, and the district court found that it was contrary to all notions of insurance policy interpretation, and their factual arguments of fraud are supported by zero evidence. If truck is granted standing to challenge any component of this plan, any insured, any insurer in every bankruptcy case will have that same standing because they have shown absolutely no harm at all. Thank you, Your Honor. Unless you have questions. Thank you very much, sir. Good to have you here. Thank you. Ms. Ho? Thank you, Your Honors. I've got a lot to shoot at. I'm just going to make three basic points. First, let me address the points my friends on the other side have made and the panel has questioned me about, about the duty of cooperation. I heard my friend, representative for the debtor, refer to the Admiral Insurance case. As we explain on page 17 of our brief, that case involved a cooperation clause that was explicitly limited by its term to suits. The language of that clause read, insured must cooperate with insurer in the investigation or settlement of the claim or defense against the suit. That is not the language that we have now. We also, on page 26 of our opening brief, cite a case called Congolium, where a New Jersey court held that a collusive settlement of asbestos claims in a 524G bankruptcy violated the insurance cooperation and good faith obligation. Point two, I heard my friends on the other side say that there is no evidence of fraud, no factual predicate, I think was the phrase used. Let me refer the panel to JA 5195 through 96, where one of our experts identified fraud against Kaiser by examining 205 Kaiser claims that overlap with Garlock claims for which discovery was available. And he found that in those cases against Kaiser, plaintiffs omitted 63% of their asbestos exposures in tort discovery. Our other expert testified, and this is at JA 5271. Are those fraud allegations as to what you call the plaintiff's bar? Is that who you claim is the fraudsters? I'm not going to make an allegation, but I'm just saying, yes, that there was widespread evidence suppression just like there was in Garlock here. You all seem to go after the plaintiff's bar, what you call the plaintiff's bar. I'm not, Your Honor, I'm not going after it. I'm just talking about the evidence of evidence suppression in these cases. You characterized that as fraud. Yes, Your Honor, I did. You said your expert said it was fraud. Yes. Yes. At a minimum litigation abuse, Your Honor. Yes. It was fraud, but I'm just trying to see who the fraudsters you claim are, and I assume you're talking about the lawyers. Correct. Yes. Correct, Your Honor. Yes. That's what you call in your brief the plaintiff's bar. Yes. A small P and a small B. Yes, and several firms that were involved in the Garlock claims found to have involved evidence suppression are also on the committee here. So there is overlap. So it wasn't mere speculation, Your Honors, about the fraud that was discovered. Yes, Your Honor. But, you know, I actually used to deal with claims. So, I mean, it's pretty normal to send some discovery request and ask a bunch of information about exposure and things like that and other causes and damages. And, you know, if people don't respond honestly, there's severe consequences under Rule 37 sanctions. I mean, I know you're very familiar with all that sort of stuff. I mean, those are there in every case. Why is that not enough for you? Is there some fault that the rules don't allow discovery into this or that just, you know, I'm not understanding why rules that I'm pretty familiar with don't give you the very protection you need. Two responses to that, Your Honor. And let me actually focus on another major source of the litigation of abuse or fraud that was uncovered. And that is the pattern of claimants who, after they're in the tort system, then go to trusts, different trusts, and make a variety of claims based on exposures that were not revealed in the trial court. So the trial courts can do nothing. They don't have the tools to do anything about that litigation abuse. And that's an entirely separate problem from the evidence suppression. And respectfully, Your Honor, that's just what the Garlock evidence disclosed, is that in these tort system claims, when claimants said how many exposures, they were simply not claiming the number of exposures that later came to light that they had presented to trusts. So I think the state court simply don't have the tools to deal with that prong of litigation abuse. But I think the main point, Your Honor, is there simply was a factual predicate. Let me also respond on, really briefly, on the insurance neutrality point, if I may, Your Honor. You go right ahead. Thank you, Your Honors. Again, I think the key thing there, why this plan is not insurance neutral, is that the order itself approving the plan takes a coverage defense that we asserted as to this proceeding. So this is not speculative about some future proceeding. About this proceeding, and the district court resolved that question against us. Judge King, as you said, we lost on that issue. So the plan is not insurance neutral, and at a minimum, we have the ability to challenge that on appeal. My last point to your series of questions, Judge Quattlebaum, about 524 and our standing to make that point. We take the statute at its word that a party in interest has standing to be heard on all issues. But even if we're wrong about that, at a minimum, we would have standing to challenge, set aside the 524G compliance. It's a separate argument that the plan does not comport with good faith, with the good faith requirement. That's a separate and alternative basis than the 524G. And for both the insurance neutrality issue and the good faith issue that we've raised, that we believe we have standing to raise, the remedy that we're seeking is the same. That this court would remand with instructions. It's a simple, it's a limited remedy for the district court below to include the same anti-fraud provisions that apply in this trust to the uninsured claims that the trust is responsible for. And I do have to respectfully correct or alter something that I believe I heard one of my friends say on the other side about that somehow claimants can no longer seek punitive damages. I'm not aware of any support for that. And the one punitive damages that was awarded, I think I heard $20 million. That's one in 38,000 claims, and that was later cut down to just under $4 million on appeal. So we think we have standing across the board, we think at a minimum, this court can remand with instructions for the district court simply to add the same basic fraud protections that are in the plan that apply to uninsured claims for which the trust is responsible for and apply those same protections to the insured claims that we are responsible for. There are no further questions. Thank you, Ms. Schultz. Thank you. We appreciate it very much. And I'll say again what we mentioned earlier in the first case. We normally, this court, arrives from the bench now and come down and recounsel. And we're happy to have you here and compliment you on the hard work that you've done in this case and we know that you all have done in this case. We really appreciate it and we appreciate good lawyering and we're glad to have you here. Next time you come, we'll shake hands with you.
judges: Robert B. King, G. Steven Agee, A. Marvin Quattlebaum Jr.